UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Nancye M. O'Neal, | ) C/A No. 4:11-1239-TLW-KDW |
| Plaintiff, | ) |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| Wal-Mart Stores East LP, | ) |
| Defendant. | ) |

This matter is before the court on the Motion for Summary Judgment of Defendant Wal-Mart Stores East LP's ("Defendant" or "Wal-Mart") as to Plaintiff's causes of action for age and sex discrimination and constructive discharge,[1] ECF No. 67. Plaintiff responded to the motion, ECF No. 82, and Wal-Mart filed a reply, ECF No. 85. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C. Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. Having considered the parties' briefs, the undersigned submits this report recommending Wal-Mart's Motion be granted.

I. Factual Background[2]

Plaintiff began working as a sales associate for Wal-Mart on May 26, 2001, at its Surfside Beach, South Carolina location ("Store #574"). O'Neal Dep. 89:12-18.[3] Throughout

---

[1] On June 18, 2012, the court issued an order dismissing Plaintiff's only other claim—one of a hostile work environment. ECF No. 65.
[2] As it must, the court considers the facts in the light most favorable to Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (noting in considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party).

her employment with Wal-Mart, Plaintiff held various positions at Wal-Mart stores in North and South Carolina. Plaintiff worked initially at Store #574 in 2001 as a sales associate and later was promoted to a department manager in electronics. ECF No. 67-1 at 24. After working at different Wal-Mart stores in North Carolina and South Carolina, Plaintiff transferred back to Store #574 in 2008 as an hourly associate in the Lawn and Garden Department. *Id.* at 25-27. The Store Manager for Store #574 was William (Bill) Argenti ("Argenti"), the Shift Manager was Jeff Blevins, and the Assistant Store Manager was Brett Stiverson ("Stiverson"). In February 2009 the Lawn and Garden Department Manager position became vacant at Store #574. ECF 67-1 at 28. The three store managers asked Plaintiff if she would be willing to work as temporary department manager while Wal-Mart began its formal selection process to fill the department manager position. She agreed. *Id.*

Wal-Mart's selection process consists of several steps. All applications for open positions are completed online, regardless of whether the applicants are Wal-Mart employees at the time. Aff. of Brett Stiverson, ECF No. 67-14, at 2-3. Applicants indicate positions in which they are interested, and when such positions become available, applicants who indicated interest are considered. *Id.* at 3. Wal-Mart's computer system determines which applicants' preferences match the vacant position, and provides those applicants' employment experience and education background. *Id.* The computer system does not reveal an applicant's age or sex. *Id.* After reviewing the list of applicants, the manager or managers select several candidates for interviews. *Id.* Interviews are conducted by asking questions contained in a company-generated document known as an "interview packet." *Id.* at 3-4. Each answer provided by the interviewee

---

[3] For ease of reference, the transcript of Plaintiff's deposition in this matter will be cited as "O'Neal Dep." The transcript is "Exhibit A" to Defendant's memorandum. *See* ECF Nos. 68-1 through 68-7. Plaintiff also provides selected excerpts of her deposition transcript as Exhibit A to her memorandum. *See* ECF No. 82-2.

2

is rated as "ineffective," "effective," or "highly effective" with regard to commitment to "task, decisiveness, integrity, and leadership." *Id.* at 4. The interviewer responds to the question of whether he or she would like to "extend an offer" to the applicant. *Id.* If the response is "no," the applicant will not be considered for the position. If the response is "yes," the applicant will be considered; however, a "yes" response does not guarantee the individual will be hired. *Id.* After the manager interviews all of the candidates, he or she often then consults with other members of management, and the top candidate is selected and formally offered the position, contingent upon the successful completion of paperwork and applicable employment-related tests. *Id.*

The slate of applicants for Store #574's Lawn and Garden Department Manager was comprised of 16 internal applicant and 49 external applicants. *Id.* at 5. Of the internal applicants, ten were male and six were female; ten were over 40 and six were under 40. *Id.* Because Wal-Mart does not record the gender or age of external candidates, the demographics of those candidates are unknown. Stiverson explained that he then selected five applicants to interview from the 16 internal applicants. Of the five internal applicants selected for interviews, three were female, and three were over the age of 40. *Id.* Two external applicants, both male, were selected for interviews. When Stiverson interviewed the applicants, he used scripts provided in the interview packets. The only two applicants rated as "highly effective" in every category were Plaintiff and Travis McClure ("McClure"). *Id.* at 6. Because they received the highest scores during the interview, Stiverson's ultimate decision was between those two candidates.

Stiverson selected McClure for the position. Although Stiverson acknowledged that he had planned initially to hire Plaintiff for the position, after interviewing McClure, he decided McClure was better qualified because of his "impressive management experience." *Id.* at 6. He also considered the fact that McClure had attended college as a positive factor. *Id.* at 7.

3

Stiverson did not know whether Plaintiff had earned any college credits, nor did he take any steps to learn whether she had. Once Stiverson made his decision, he informed McClure and McClure accepted the job as Department Manager. That same day McClure took a drug test as required by Wal-Mart policy and submitted information so that Wal-Mart could conduct a background check. McClure's official hire date was March 11, 2009.

Stiverson consulted with Argenti about how best to inform Plaintiff of his decision to hire McClure. Stiverson and Assistant Manager Shannon Banks ("Banks") met with Plaintiff, and Stiverson informed Plaintiff that he had decided to hire a manager from Circuit City. Plaintiff alleges that in this meeting Stiverson stated that he "hired a young male at the age of 27." ECF No. 67-1 at 30. Plaintiff later met with Argenti and Shift Manager Lori Hill to address her concerns regarding her failure to be hired for the position. Argenti explained to Plaintiff that McClure had held a higher level position in the Circuit City management structure than the department manager position in Wal-Mart's structure and that this made him an unusually qualified candidate. ECF No. 67-8 at 26. Argenti also told Plaintiff to "hang in there" and that she would be a strong candidate for future vacant department manager positions. *Id.* at 14.

Stiverson asked Plaintiff to train McClure in Wal-Mart procedures for the Lawn and Garden Department. McClure had no lawn and garden experience. As part of the investigation into Plaintiff's complaints regarding this matter, Assistant Manager Banks submitted a statement that she "felt it was wrong to deny [Plaintiff] the position, then expect her to train [McClure]." ECF No. 82-10. Wal-Mart assigned Sporting Goods Department Manager Ralph Clary as McClure's "sponsor," or the person officially responsible for helping McClure learn how to become a Wal-Mart department manager.

Following McClure's hiring, Plaintiff continued to work as an associate in the Lawn and Garden Department and continued to do a "good job." ECF No. 67-1 at 57. During this time Plaintiff filed a complaint with Asset Protection Associate Michael Spivey ("Spivey") to "see what he [could] find out" about Wal-Mart's decision to hire McClure instead of promoting her to the department manager position. ECF No. 67-1 at 53. As an Asset Protection Associate, Spivey was responsible for preventing theft, not investigating workplace issues such as failure to promote. ECF No. 67-11 at 6. Plaintiff gave Spivey a written statement, dated March 28, 2009, summarizing her concerns. ECF No. 67-7 at 6. The statement recounts that Stiverson told her she did not get the position and "they hired a man from Circuit City and that he was mgr. material and that he had a College Degree." *Id.* In the statement, Plaintiff alleged that Stiverson and McClure knew each other personally, and she believed Stiverson made the decision to hire McClure before concluding the interview process. *Id.*

After giving Stiverson her two-weeks' notice, Plaintiff voluntarily resigned her position at Wal-Mart on June 18 or 19, 2009. ECF No. 67-1 at 57. Plaintiff began working as a manager at a Shoney's restaurant on June 29, 2009. ECF No. 67-3 at 6. At Shoney's, Plaintiff was a salaried manager earning $33,020 per year, which she acknowledged was "a little bit more than [she] was making at Wal-Mart." ECF No. 67-1 at 74. After less than a month at Shoney's, Plaintiff quit without giving notice because "her nerves couldn't handle" learning the procedures she was required to learn at Shoney's. *Id.* at 73. In July 2009, shortly after resigning from Shoney's, Plaintiff filed a post-resignation internal "Open Door" complaint with Wal-Mart's Human Resources department. ECF No. 67-1 at 42. Because Plaintiff had voluntarily resigned, she was eligible for rehire and was offered another position at Wal-Mart in August 2009.

Plaintiff rejected the offer of rehire because she wanted full reinstatement without loss of seniority and benefits. *Id.* at 42-43.

On October 5, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Wal-Mart failed to promote her on March 6, 2009, and constructively discharged her on June 18, 2009, both on the basis of age and sex. ECF No. 82-12. Wal-Mart responded indicating that McClure was the best qualified candidate based on his "extensive, continued management experience" and his "years in college." ECF No. 82-13 at 2. The EEOC issued a notice of right to sue on February 25, 2011, ECF No. 82-14, and Plaintiff timely brought this action.

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248*; see also Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) (noting court could not assume the existence of a genuine issue of material fact when none exists).

All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

B. Analysis

Plaintiff brings claims for failure to promote based on age and sex, and constructive discharge. A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce

evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the absence of direct evidence, the same burden-shifting framework applies to discrimination claims brought pursuant to the AEDA. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

To state a cause of action for constructive discharge a plaintiff must allege "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (internal quotation marks and citations omitted). To plead the deliberateness element properly, a plaintiff must allege that "the actions complained of were intended by the employer as an effort to force [her] to quit." *Id.*

1. Plaintiff's Failure-to-Promote Discrimination Claim

Plaintiff avers she was discriminated against because of her gender and her age. She attempts to establish her discrimination claims with both direct evidence and by using the indirect, burden-shifting method set out by the United States Supreme Court in *McDonnell Douglas*. Defendant moves for summary judgment as to Plaintiff's claims.

a. Direct Evidence of Discrimination

Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Direct evidence of discrimination is evidence which,

if believed, would prove the existence of a fact without any inferences or presumptions. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548–549 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996). Plaintiff cites three statements as direct evidence of a stated purpose to discriminate: (1) Stiverson's alleged description of McClure as "a young male at the age of 27[;]" O'Neal Dep. 115:23-24; (2) the opinion of Shannon Banks that she "felt it was wrong to deny [Plaintiff] the position, then expect her to train [McClure;]" ECF No. 82-10; and (3) Stiverson's statement given during Wal-Mart's internal investigation made after Plaintiff's post-resignation complaint to Human Resources, that he "[did] not recall how or if [he] did use sex as a reason[;]" ECF 82-11.

Not every comment concerning a person's age or sex is direct evidence of discrimination. "[C]ourts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *Martin v. Alumax of S.C., Inc.*, 380 F. Supp. 2d 723, 728 (D.S.C. 2005) (quoting *Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). To meet her evidentiary burden, Plaintiff "must present evidence which demonstrates 'a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision.'" *Martin*, 380 F. Supp. 2d at 728, (citing *Braziel v. Loram Maint. of Way, Inc.*, 943 F. Supp. 1083, 1095 (D. Minn.1996)).

Considering the comments cited by Plaintiff as true, the undersigned finds that they do not indicate that Stiverson was motivated not to promote Plaintiff or to hire McClure based on gender or age. These comments "cannot be seen as 'blatant remarks, whose intent could be nothing other than to discriminate . . . ,' because there may have been other reasonable interpretations of the comment." *Martin*, 380 F. Supp. 2d at 730 (quoting *Carter*, 870 F.2d at

582). Defendant argues that the first alleged comment by Stiverson, that he selected "a young male at the age of 27,"[4] is merely a description of the individual selected and does not reflect a discriminatory attitude or a stated intent by Wal-Mart to discriminate. ECF No. 85 at 3. The second statement, made by Banks in response to an investigation by Wal-Mart into Plaintiff's post-resignation complaint, does not indicate any improper discriminatory motive. Banks does not allege that Stiverson discriminated against Plaintiff on the basis of age or gender by asking her to train McClure. The third alleged discriminatory statement was also provided in response to Wal-Mart's investigation. Stiverson wrote the following statement:

> I Brett Stiverson did state the fact that one of the reasons I did select [McClure] over [O'Neal] because of college education. In the fact it qualifies as a better applicant. When asked about the question of age I never used age as a reason or stated it. The question about male or female I do not recall how or if I did use sex as a reason. This situation has been 6 months ago. I truly do not remember. This statement is in regards to a situation that happened over 5 to 6 months ago. [O'Neal] was my top pick in the position for Dept. Mgr. for Dept. 16. I felt bad for her not to be selected when she and I both felt she would have the position. I was even scheduling her the hours and letting her and selected her to do the role of Dept. 16 and the responsibilities. It was hard for me to select a different person other than [O'Neal]. I selected [McClure] for his experience as a manager. I told Bill, Jeff he should be an assistant mgr. going into training. Since he was not selected I put him as our Dept. 16 Dept. Mgr.

ECF 82-11 at 2-3.

Plaintiff argues that because Stiverson wrote that he did not recall "how or if" he used sex as a reason, a jury could infer bias from the context in which the statement was made. ECF No. 82 at 8. Defendant asserts that the statement implies that Stiverson may have provided the sex of McClure when describing him to Plaintiff, but Stiverson was certain he did not mention McClure's age. ECF No. 85 at 5. "[N]ot every comment about an employee's race, gender, religion, or age is direct evidence of discrimination." *Price Waterhouse v. Hopkins*, 490 U.S.

---

[4] Stiverson denies making this remark; however, for summary judgment purposes the facts asserted by Plaintiff are taken as true.

228, 277 (1989) (O'Connor, J. concurring). When taken in isolation, Stiverson's statement that he "[did] not recall how or if [he] did use sex as a reason," may seem probative of gender bias. However, viewed in the context of his entire statement, and considered within the timeframe in which it was written, the undersigned finds that the statement is not sufficient evidence to support a finding by a reasonable fact finder that an illegitimate criterion *actually motivated* Stiverson's selection of McClure over Plaintiff.

Accordingly, Plaintiff has not presented sufficient direct evidence of her claims to survive summary judgment on that basis. The court next considers the indirect evidence of discrimination that Plaintiff has presented.

### b. *McDonnell Douglas* Standard

A plaintiff may establish a claim for failure to promote by using the burden-shifting framework established for Title VII claims in *McDonnell Douglas*. Under this scheme Plaintiff must prove that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) [Defendant] rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Defendant concedes Plaintiff produced evidence to support her prima facie case of age and sex discrimination.[5] ECF No. 68 at 19. Therefore, the burden shifts to Wal-Mart to articulate a legitimate, non-discriminatory reason for not promoting Plaintiff. After Wal-Mart states a reason for its decision, Plaintiff has the opportunity to show that the stated reason is a pretext for discrimination. *Anderson*, 406 F.3d at 268.

---

[5] Although citing to *Anderson*, Defendant lists the fourth prima facie element of a failure-to-promote claim as "[defendant] hired an applicant outside the protected class(es)." ECF No. 68 at 18.

Defendant submits that McClure was selected over Plaintiff because of his previous management experience. ECF No. 68 at 19. Stiverson indicated that he viewed McClure's college background favorably, and even if he had determined Plaintiff had attended college he would have still selected McClure because of his management experience. Stiverson Aff., ECF No. 67-14 at 7. Because Defendants have set forth a legitimate non-discriminatory reason for not promoting Plaintiff and for selecting McClure, Plaintiff must show Defendant's reason is pretextual. Plaintiff argues that Defendant's contention regarding McClure's management experience is without merit because McClure possessed no experience in management of a lawn and garden department. ECF No. 82 at 11. Plaintiff asserts that she was more qualified than McClure given her experience in the department, and because she was asked to train McClure on the lawn and garden department procedures. *Id.* Plaintiff further alleges that, because Stiverson was unaware of Plaintiff's educational level and did not delve into the particulars of McClure's education, the allegation that McClure's education was a sufficient reason for his selection is also without merit. *Id.* at 11-12. Defendant contends that Stiverson's reliance on McClure's education "was certainly secondary to the managerial experience" and did not factor into his decision. ECF No. 85 at 9.

> The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . It is not enough to disbelieve the [employer]. Rather, Plaintiff must demonstrate that a reasonable jury could believe [her] explanation of intentional . . . discrimination.

*Billingslea v. Astrue*, No. 6:10-01467-JMC, 2012 WL 988125, at *4 (D.S.C. Mar. 22, 2012) (internal quotations and citations omitted). Plaintiff's opinion that McClure was not qualified or that she was more qualified is irrelevant. *See Burdine*, 450 U.S. at 259 ("[T]he employer has

discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (emphasizing that a plaintiff's own self-interested assessment of the qualifications for a particular position is irrelevant and that it is the decision maker's assessment that matters). Stiverson attests that the only two applicants he interviewed whom he rated "highly effective" in every category were McClure and Plaintiff. Stiverson Aff., ECF No. 67-14 at 6. He rated Plaintiff higher than two other male candidates, and one substantially younger candidate. *Id.* Stiverson stated that he "eventually selected McClure based upon several factors, the most important of which was his impressive management experience at Circuit City." *Id.*

Plaintiff has not produced sufficient evidence of pretext to avoid summary judgment regarding Wal-Mart's nondiscriminatory reasons for not promoting her. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–320 (4th Cir. 2005) (finding that plaintiff had failed to forecast sufficient evidence of pretext to avert summary judgment, even assuming plaintiff was more qualified than the person promoted, when plaintiff did not allege a flaw in the rating system or that the evaluations had not been fairly conducted); *see also Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (finding no evidence of pretext for failing to promote plaintiff who, despite serving as interim manager, had not performed many of the key management functions of the position). Thus, the undersigned recommends the court grant Defendant's motion for summary judgment with regard to Plaintiff's failure to promote claim.

C. Plaintiff's Constructive Discharge Claim

Plaintiff also alleges she was constructively discharged. Am. Compl. ¶¶ 27-30. The parties do not dispute that Plaintiff submitted her resignation and was not terminated by Wal-Mart. Their characterization of Plaintiff's leaving Wal-Mart's employ, though, differs.

As the Fourth Circuit explained, "an employee is constructively discharged 'if an employer makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" *Whitten*, 601 F.3d at 248 (quoting *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1353-54 (4th Cir. 1995)). Plaintiff must demonstrate the "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Whitten*, 601 F.3d at 248 (internal quotation marks and citations omitted). In establishing deliberate action on the employer's part, a plaintiff must prove "that the actions complained of were intended by the employer as an effort to force the employee to quit." *Martin*, 48 F.3d at 1353-54. Deliberateness is found if the employer's actions were intended to force the employee to resign. *Id.* at 1354.[6]

---

[6] The *Martin* court acknowledged that the majority of the circuits focus on the effect an employer's actions have on an employee and whether a reasonable person in the employee's position would have felt compelled to resign. 48 F.3d at 1354 (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987); *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984); *Bourque v. Powell Elec. Manuf. Co.*, 617 F.2d 61, 65 (5th Cir. 1980)).
　　The Fourth Circuit Court of Appeals takes the minority view, which requires a plaintiff to also prove that "the actions complained of were intended by the employer as an effort to force the employee to quit." *Martin*, 48 F.3d at 1354. The Fourth Circuit at least nodded to this difference in *Whitten*, noting that the language of the *Suders* opinion suggested the Fourth Circuit's "requirement that the plaintiff prove the employer intended to force the plaintiff to quit is arguably in some tension with the Supreme Court's decision in *Suders*[.]" 601 F.3d at 248 n.8 (noting *Suders* defined constructive discharge as including working conditions "'so intolerable that a reasonable person would have felt compelled to resign.'"). Nonetheless, the Fourth Circuit noted it had continued to "apply the deliberateness requirement to constructive-discharge claims since *Suders* was decided[,]" and found that circuit precedent prevented it from considering Whitten's argument that deliberateness was no longer an element of a constructive discharge

The Fourth Circuit requires "proof of the employer's specific intent to force an employee to leave." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). "Intent can be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id.* Intent may also be shown by evidence that the employee's resignation was the reasonably foreseeable consequence of the employer's conduct. *Martin*, 48 F.3d at 1355.

In determining whether working conditions are "intolerable," the standard used is an objective one of "whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255. As noted in *Bristow*,

> [T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Id.*

In support of its argument that Plaintiff was not constructively discharged, Wal-Mart argues that Plaintiff is unable to establish deliberateness on behalf of her employer or intolerability of working conditions. As evidence of both prongs of the constructive discharge analysis, Plaintiff points to two instances in which McClure stated that he observed Plaintiff was upset. In his deposition, McClure testified that the first instance occurred shortly after he was hired when Plaintiff "vented" to him about not being selected for the position. ECF No. 67-9 at 16-17. The second instance was closer to the time Plaintiff left her employment at Wal-Mart. McClure noticed that she looked visibly upset, and upon his inquiry Plaintiff indicated she was upset about her work schedule. *Id.* at 15. In neither instance did McClure observe Plaintiff

---

claim. 601 F.3d at 248 n.8. *See also Carter v. Centura Col.*, Civil Action No. 2:10-907-CWH, 2012 WL 638800, *11 (D.S.C. Feb. 27, 2012) (noting the Fourth Circuit's discussion of, and continued requirement of, deliberateness in constructive-discharge matter).

15

shaking, trembling, or crying. *Id.* at 15-16. Plaintiff also testified in her deposition that Stiverson "actually intended to make her quit" telling her that he was "going to push all [her] buttons" and that she would never be a "boss." ECF 82 at 21. Even viewed in the light most favorable to Plaintiff, these examples do not rise to the level of proof described by the Fourth Circuit as necessary to prove constructive discharge.

"Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person. However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (internal quotation marks and citations omitted). In fact, the Fourth Circuit has specifically held that "the denial of a single promotional opportunity is insufficient to create an intolerable working environment." *Id.* at 263 (internal citations and quotation marks omitted); *see Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (holding that the employee's allegations that supervisors yelled at her, told her she was a poor manager, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back did not establish objectively intolerable working conditions as required to support a claim of constructive discharge under federal law); *Matvia*, 259 F.3d at 273 (denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position . . . would not have compelled the reasonable person to resign. These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable.").

The undersigned finds that Plaintiff has not presented sufficient evidence to create a genuine issue of fact that the two observations by McClure, the comments made by Stiverson, or

the fact that she was asked to train McClure would compel an objectively reasonable employee to resign. Summary judgment is appropriate as no reasonable juror could conclude that the Plaintiff was constructively discharged.

      D. Claim for Back Pay and/or Front Pay

In its Motion for Summary Judgment, Defendant alternatively argues that, even if Plaintiff's claims survive summary judgment, she should be prohibited from seeking back pay or front pay. "In the case of a Title VII claimant who has been unlawfully discharged, the duty to mitigate damages requires that the claimant be reasonably diligent in seeking and accepting new employment substantially equivalent to that from which he was discharged." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985). If a claimant undertakes similar employment and then voluntarily quits, back pay should be decreased by the amount he would have earned had he not quit. *Id.*

Defendant argues Plaintiff should be precluded from seeking back pay or front pay because after obtaining a management job paying more than what she was earning at Wal-Mart, she quit the job because she was unwilling, or was unable, to learn the job's requirements. ECF No. 68 at 32-34. Plaintiff counters that, because the new position was not substantially similar to her position at Wal-Mart, she should receive front pay and back pay. ECF No. 82 at 23-24.

As discussed above, the undersigned is of the opinion that, as a matter of law, Plaintiff was not constructively discharged by Wal-Mart and has no viable causes of action that would permit the award of any damages. In the event the district judge determines that a jury should consider Plaintiff's claims, the undersigned respectfully submits that decisions regarding what damages may be presented to the jury are decisions more appropriately considered by the trial judge. *Cf. Pepper v. Precision Valve Corp.*, Civil Action No. 6:10-2532-MGL-KFM, 2012 WL

5381190 (D.S.C. Aug. 6, 2012) (recommending summary judgment because plaintiff could not establish his claims and not addressing defendant's alternative arguments, which included argument regarding back pay and front pay), adopted, 2012 WL 5380930 (Oct. 31, 2012).

III.  Conclusion

For the foregoing reasons, the undersigned recommends that the court grant Defendant's Motion for Summary Judgment, ECF No. 67, and dismiss this case.

IT IS SO RECOMMENDED.

November 16, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**